CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 2 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

SCOTT VANCE,                                    )
                                                )
       Plaintiff,                            )
                                                )       Civil Action No. 5:05CV00013
v.                                              )
                                                )       **MEMORANDUM OPINION**
JOHN E. POTTER, POSTMASTER                      )
      GENERAL, UNITED STATES                   )       By: Hon. Glen E. Conrad
      POSTAL SERVICE                           )       United States District Judge
                                                )
       Defendant.                            )

This matter is before the court on defendant Potter's motion for summary judgment. For

the reasons stated below, the court will grant the defendant's motion as to the plaintiff's three

counts for discrimination and deny the motion as to the plaintiff's retaliation claim.

The court notes that Vance has not contested the defendant's motion for summary

judgment on his claims of religious discrimination (Count II) or age discrimination (Count III).

Nor has he presented the court with any factual basis to support his claims. Because no evidence

has been cited in support of Vance's claims for religious or age discrimination, the court will

grant the defendant's motion for summary judgment as to those two counts.

With regard to the plaintiff's remaining disability discrimination claim, the court notes

that prior to the hearing, the plaintiff moved to amend his complaint so that it reflected a claim

under the Rehabilitation Act, 29 U.S.C. § 794(a), rather than the Americans with Disabilities

Act, 42 U.S.C. §12112(a). At the hearing, the court orally granted the plaintiff's motion to

amend. The summary judgment motion was argued under the Rehabilitation Act. Therefore, the

court will consider the plaintiff's claim and the defendant's motion for summary judgment to be

under the Rehabilitation Act.  For reasons given below, the defendant's motion for summary

judgment as to this claim will also be granted.

The plaintiffs remaining claims arise under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e-3, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.  This court

has jurisdiction over both claims pursuant to 28 U.S.C. §1331.

## BACKGROUND

### A.    The Plaintiff's Employment History

The plaintiff is a former employee of the United States Postal Service (USPS).  He was

employed at the Post Office in Harrisonburg, Virginia, from July 3, 2000, until his termination on

April 30, 2004.  Prior to his employment in Harrisonburg, he had been employed at a Post Office

in Oregon.  He was transferred from Oregon to Harrisonburg pursuant to a settlement reached in

Vance's Equal Employment Opportunity (EEO) claims against the USPS in Oregon.  Also as

part of that settlement, Vance's USPS disciplinary records were to be expunged before his

personnel file was transferred to Harrisonburg.  Instead, those records were sent anonymously to

Postmaster Kenneth Hummel after Vance arrived in Harrisonburg.

The record indicates that Vance's employment at the Harrisonburg Post Office was rocky.

Prior to the events that culminated in the April 30, 2004, termination, Vance was subject to

fourteen disciplinary actions by management at the Harrisonburg Post Office.  Vance filed

grievances with regard to each of those actions, and all but two were rescinded or removed from

Vance's personnel file.   In addition to these disciplinary actions, Hummel required Vance to

participate in a psychiatric fitness for duty examination in 2002.  On May 28, 2002, Hummel

wrote a letter to the physician conducting the fitness for duty examination before the physician

2

assessed Vance. The letter was written to express concern regarding Vance's behavior and outlined a number of difficulties Hummel had had with Vance throughout Vance's employment in Harrisonburg. Hummel testified at deposition that during his nine years as postmaster, this was the only fitness for duty examination with which he had been involved. Hummel also stated that he requested the exam because Vance "had become impossible to manage." In the arbitration award issued subsequent to Vance's grievance regarding the fitness for duty examination, the arbitrator determined that management was not justified in requiring Vance to report for the fitness for duty examination.

On several occasions during his time at the Harrisonburg Post Office, either at the behest of Vance or Hummel, Vance also met with workplace improvement analyst Kenneth Seiders. At one point, Seiders was asked to perform an assessment to determine if Vance posed a risk of workplace violence. The record also reveals that Vance was the subject of more customer complaints to the Post Office than other mail carriers and that his supervisors had to deal with numerous arguments between Vance and other postal employees.

The record also demonstrates that Vance suffered from health problems during his time at the Post Office. Vance was under medical restrictions for knee problems throughout much of 2002 and 2003. The record also shows that in August 2002, Vance underwent angioplasty. As follow-up to the surgery, Vance participated in cardiac rehabilitation from October through December 2002.

In Fall 2003, Vance was subject to two disciplinary procedures that were not rescinded or removed from his personnel file. The first was a warning letter issued by the defendant for failure to follow instructions and creating a disturbance on the workroom floor. The second was

3

a fourteen-day suspension for failure to follow instructions, disrupting postal operations, and acting in a manner that reflected poorly on the USPS. These two matters were not resolved by the USPS's internal grievance process.

The final disciplinary action against Fitzgerald culminated in his termination. On March 23, 2004, Christine Rhoads, Vance's immediate supervisor, issued a Notice of Removal for events that occurred on March 9, 2004. The notice was based on improper conduct and failure to follow instructions on that day. In the letter, Rhoads stated that, in determining her course of action, she had considered the 2003 letter of warning and fourteen-day suspension.

Several facts are in dispute regarding the incident on March 9, 2004, but the framework of the story is uncontested. On that morning, Vance arrived to work at the Harrisonburg Post Office following five days of sick leave. Rhoads intended to engage Vance in a predisciplinary investigation (PDI) that morning regarding his behavior the week before his sick leave. Before he began working, Rhoads approached Vance and asked what he was doing. Rhoads and Vance went together into the office of Union Shop Steward Roy Smith to continue their discussion. Upon entering the office, Rhoads told Vance that they needed to "get something straight" and Vance agreed. After the initial discussion in Smith's office, Rhoads left the office so that Smith and Vance could talk alone. Rhoads returned to the office to begin the PDI. Vance refused to cooperate. At some point after Vance refused to cooperate with the PDI, Rhoads told Vance to return to his case and work. Vance found that there was no work to be done at his case and returned to Rhoads. Rhoads told him to return to his desk or he would be removed from the building. At some point, Rhoads called the police. The police arrived and asked Vance to leave the building.

4

The most significant factual dispute in the case concerns the tone of the exchange between Rhoads and Vance on that day. Vance argues that Rhoads caused the incident by essentially waylaying him when he arrived at work. This argument is supported by Smith's later statements about the incident. When interviewed after that day, Roy Smith stated that Rhoads provoked the incident through her manner and tone, and that the incident could have been avoided altogether had she acted "more professional." Rhoads maintains that the incident was provoked by Vance who was hostile and combative. For support, the defendant relies on Roy Smith's statements made the day of the incident in which he indicated that Vance was angry and yelling. There is also dispute in the evidence as to whether the incident caused a disturbance on the workroom floor, as the Notice of Removal states, and whether Vance called another employee a derogatory name on that day.

## B.    Case History

Plaintiff's complaint in this case arises from two of the plaintiff's EEO claims against his employer, agency case numbers 4K-230-0100-02 and 4K-230-0094-04 . The plaintiff brought both actions claiming age, disability, and religious discrimination, as well as retaliation. In a memorandum opinion issued January 23, 2006, the court dismissed the plaintiff's claims pursuant to agency case number 4K-230-0100-02 as not timely filed. The court determined that the claims pursuant to the plaintiff's later EEO case, number 4K-230-0094-04, were timely filed and those claims were allowed to go forward. Those claims form the basis of the instant case.

On February 28, 2006, the court issued a second memorandum opinion denying the defendant's motion to strike portions of the plaintiff's complaint that did not relate to events occurring on March 9 or 23, 2004. In that opinion, the court noted that portions of the plaintiff's

5

complaint not directly relating to those two dates are "material to the remaining claim, because they relate to the plaintiff's claim for retaliation." February 28, 2006, Memorandum Opinion at 3. The court continued, saying "[w]hile the plaintiff is not allowed to pursue recovery for the acts alleged in those portions of the complaint, he will be allowed to use those allegations in his claim for retaliation...." *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law only where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). On motion for summary judgment, the court's inquiry is the same as when directing a verdict, namely, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). The court may issue a summary judgment despite the existence of contested facts if those facts are immaterial and the dispute is not genuine. A fact is material when it can affect the outcome of the suit under governing law. *Id.* at 248.[1] A dispute is genuine only when it is "such that a reasonable jury could return a verdict for the non-moving party." *Id.* When ruling on a motion for summary judgment, the court does not necessarily need to make findings of fact, but doing so can be helpful. *Id.* at 250.

As the non-moving party who will bear the burden of proof at trial, Vance is required to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). He

---

[1] In *Liberty Lobby*, the Court went on to explain that "while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are irrelevant that governs." *Id.*

6

cannot merely rely on his pleadings. *Id.* The Supreme Court has explained the evidentiary requirements that apply to Vance here saying that the rule "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In addition, Vance "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

## DISCUSSION

### A.    Plaintiff's Action for Disability Discrimination

The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability... shall, solely by reason of his or her disability, ... be subjected to discrimination...by the United States Postal Service." 29 U.S.C. 794(a). To make a prima facie showing of disability, Vance is required to establish that (1) he has a disability, (2) that he is otherwise qualified for the job, and (3) that he suffered an adverse action solely on the basis of the disability. *Doe v. Univ. Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).

Disability is defined as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. 705(9)(B). This definition is unbundled to comprise three elements: the plaintiff must show that he has a physical or mental impairment, he must show that the impairment limits a major life activity, and he must demonstrate that the limitation is substantial. *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 194–95 (2002). The difficulty in showing disability lies in the second and third elements. The Supreme Court has cautioned that "substantially" and "major" should "be interpreted strictly to create a demanding

7

standard for qualifying as disabled." *Toyota Motor*, 534 U.S. at 197.[2] The Court interpreted

"substantial" as precluding "impairments that interfere in only a minor way with the performance

of manual tasks." *Id.* at 197. Likewise, the Court interpreted "major life activities" as those that

"are of central importance to daily life." *Id.* The Court concluded by holding that "to be

substantially limited in performing manual tasks, an individual must have an impairment that

prevents or severely restricts the individual from doing activities that are of central importance to

most people's daily lives. The impairment's impact must also be permanent or long term." *Id.*

The Court went on to note that it is not enough for a plaintiff to submit evidence of a medical

diagnosis. Rather, the plaintiff must present evidence regarding the extent of the impairment's

impact on him such that the court can undertake an individualized assessment of the effect of the

impairment. *Id.* at 198–99.

The court notes that none of the facts relating to Vance's claim for disability are

contested. The issue before the court is merely whether the evidence submitted is sufficient to

support the plaintiff's claim for disability discrimination under the Rehabilitation Act. After

applying the definitional and evidentiary standards elucidated by the Court in *Toyota Motor*, this

court determines that Vance has failed to allege facts sufficient to support a finding of disability

based on any of his three impairments.

**1.      Plaintiff's Knee Problems**

---

[2]In *Toyota Motor*, the Supreme Court was applying the standards set forth by the ADA, not the Rehabilitation Act. The definition of disability in ADA and this section of the Rehabilitation Act are the same. *Compare* 29 U.S.C. §705(9)(B) *and* 42 U.S.C. §12102(2)(A). The court, therefore, applies the Supreme Court's explication of the term as used in the ADA to this Rehabilitation Act claim. *See Thomas v. Potter*, 2006 WL 2850623 (E.D. Va. 2006) (doing the same).

8

The record before the court demonstrates that Vance has suffered with knee problems for some time, likely as a result of injuries sustained in 1994 and 2001. The record includes several documents related to Vance's Office of Worker's Compensation claim for a knee injury that occurred in June 2001. The claim was denied in October 2003. The record also includes medical restriction letters related to his knee problems that date from May 2002 to October 2003. The records show that from October 12, 2002, until November 4, 2003, Vance was under medical restrictions requiring modifications in the way he carried his route and requiring him to wear a knee brace at some times.

Vance asserts that he should be considered disabled under the Act first because he has shown that he suffered from chronic knee and heart problems and that "there can by no argument that walking and the circulation of blood do not implicate a major life activity." He asserts in his memorandum that because of his knee problem, he could not carry his route in the way that it was cased and that he had medical restrictions related to his knee. Vance's statements during deposition provide the only direct evidence as to the effect of this impairment on Vance's daily life. The discussion of the impact of Vance's knee problems during deposition was very brief. When asked if he was required to wear his brace at all times while carrying the mail, Vance responded that he did not think so, but he "felt like [he] needed it."

The court finds that the record is insufficient to support a claim for disability based on Vance's knee injury. The only evidence relating to the problem consists of documents revealing that for about eighteen months the plaintiff was under medical restrictions related to his knee, and the plaintiff's own statement that the use of his knee brace was not required but was probably necessary. Such scant evidence does not support the notion that the knee condition substantially

9

limits plaintiff's ability to carry out major life activities. As such, it cannot be enough to withstand a motion for summary judgment. The court, therefore, will grant the defendant's motion for summary judgment as to the plaintiff's Rehabilitation Act claim based on his knee condition.

## 2. Plaintiff's Heart Problems

The court likewise finds that there is insufficient evidence to support the claim that Vance has suffered from any disability based on his heart condition. The record before the court indicates that sometime in August 2002, Vance underwent angioplasty, and that the procedure required follow-up cardiac rehabilitation through November 2002. There is absolutely no evidence, however, of a disabling condition that has severely limited Vance's activities. In fact, Vance denied any cardiac disability in his deposition when he affirmed on questioning that his heart condition did not in any way limit his activities at work or outside of work. Based on this fact, the court concludes that Vance has failed to bring forth evidence to support his claim of cardiac disability.

Moreover, the court notes that even if Vance had made the requisite showing of cardiac disability, his complaint is barred by this court's January 23, 2006 opinion dismissing the plaintiff's claims arising under his EEO case number 4K-230-0100-02. In the earlier claim, Vance alleged that the defendant engaged in discriminatory activity on November 15, 2002, when the defendant made it difficult for Vance to attend his cardiac rehabilitation. In the plaintiff's brief and at the hearing conducted on December 12, 2006, the plaintiff alleged that he suffered discriminatory conduct because of his heart condition when the defendant refused to accommodate Vance's need to attend cardiac rehabilitation. Specifically in support of his

10

allegation, Vance's brief cites a medical excuse letter from Linda Tinsley dated November 15, 2002. Because the letter cited and the date of the action on which the plaintiff's original complaint was based are the same, the court concludes that the claim before it is the same as that dismissed on January 23, 2006. For these reasons, the court grants the defendant's motion for summary judgment as to the plaintiff's Rehabilitation Act claim based on his heart condition.

**3.      Plaintiff's Depression, Anxiety, and Stress**

There is even less evidence in the record to support Vance's claim for disability based on his depression, anxiety, and stress disorders. Despite asserting that "[a]gain the medical records establish this condition and the depression limits his life activities and it is substantial," the only record evidence of Vance's mental disability is his deposition testimony. The plaintiff stated in his deposition that he was under the care of a psychiatrist for his depression, anxiety, and stress. When asked whether he was able to care for himself, Vance replied "not very well, but I was, yeah." Vance clarified, saying, "I mean, I was able to do basic things." The record is devoid of any other information regarding Vance's mental condition and its impact on his life. The court therefore grants the defendant's motion for summary judgment on the plaintiff's Rehabilitation Act claim of discrimination based on his mental condition because the plaintiff has failed to allege any facts regarding how that condition impacted his daily life.

**B.      Plaintiff's Retaliation Claim**

In the first count of his complaint, Vance argues that the defendant retaliated against him for filing the EEO complaint in 2002 by engaging in numerous disciplinary actions against him that culminated in his termination. Vance contends that because of this EEO claim, the management at the Harrisonburg Post Office engaged in a campaign to get rid of him. The

11

strategy of this alleged campaign was to subject Vance to an inordinate amount of disciplinary activity and require him to undergo psychiatric and occupational assessments. Vance argues that most of these remedial actions were unnecessary. As support for this argument, Vance demonstrates that the first twelve disciplinary measures undertaken by the Harrisonburg Post Office were either rescinded or removed from his record after grievance; the arbitrator found that the management lacked cause to order him to undergo a psychiatric fitness for duty exam; and the specialist brought in to conduct a threat assessment determined that Vance did not pose a threat to employees or patrons of the USPS.

According to Vance, the Harrisonburg Post Office management was finally successful in its campaign when, only two weeks after the resolution of his first EEO claim, it was able to manufacture cause for firing. Vance argues that on March 9, 2004, Rhoads instigated the altercation and provoked him in such a way as to give her cause to terminate him. Vance argues that the close temporal proximity between March 9, 2004 and the Final Agency Decision on his first EEO claim is sufficient to demonstrate that management was waiting until his first EEO claim had run its course to deliver its final blow and fire him.

Title VII provides, in relevant part, that "[i]t shall be unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §2000e-3(a). To make a prima facie case of retaliation under Title VII, Vance must show that (1) he engaged in a protected activity, such as filing an EEO claim, (2) that he suffered a materially adverse action, and (3) that there is a causal connection between the protected activity and the materially adverse action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (citation omitted).

12

There is no dispute that Vance was engaged in protected activity. He filed an EEO claim against the Harrisonburg Post Office. There is also no argument that Vance suffered a materially adverse employment action. He was fired. The contention between the two parties rests on the final element of Vance's claim, the link between the termination and his EEO claims.

Causation goes to the defendant's underlying reasons for those actions. The causal connection can be supported by either direct or inferential proof. Vance relies on inferential, or circumstantial, proof of a causal link between his EEO claim and his termination. Circumstantial proof of causation can be supported by evidence that USPS knew of the protected activity and the proximity of time between the protected activity and the adverse event. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

Vance cites the fact that he was terminated only two weeks after resolution of his first EEO claim to establish causation. There is no doubt from the record that the Harrisonburg Post Office management knew that Vance was engaged in protected activity. The issue at this stage in the inquiry is whether Vance has alleged sufficient facts to establish a temporal connection from which causation may be implied. In *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the Court stated that a plaintiff could not show the causal element necessary for a retaliation claim where the employer knew of the protected action 20 months prior to the adverse action. *Id.* at 273 (dictum). The Court went on to note that, of the cases that accept temporal proximity as a basis for causation, all require the proximity to be "very close." *Id.* (citations omitted). If the court accepts Vance's argument and focuses only on the temporal relationship between the February 24, 2004, Final Agency Decision and the March 9, 2004, incident, the proximity is sufficient to establish the causal connection necessary for a prima facie claim.

13

The defendant argues, however, that the relevant protected activity date is not the date of the Final Agency Decision but the date of the initial filing of the claim almost two years earlier. If the court were to accept this argument, the plaintiff cannot establish causation based on temporal proximity. A canvass of Fourth Circuit cases that have upheld a finding of temporal proximity between EEO activity and the adverse action indicates that the Court generally considers the date of the initial filing when making the determination. *See e.g., King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003); *Burns v. Uninet*, No. 99-1264, 2000 WL 349763, at *4 (4th Cir. April 5, 2000) (unpublished). However, the Fourth Circuit has also noted that the date of the formal filing of an EEO claim need not be considered the protected activity date for purposes of determining temporal proximity. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001) (determining that the plaintiff's informal EEO complaints of discrimination constituted protected activity). The court is cognizant of the logic in Vance's argument that the later date is more significant because it is reasonable to assume that the defendant might have been reluctant to fire Vance while he had a pending EEO claim for retaliation and discrimination. Under Vance's argument, however, it follows that the defendants must have been aware that a final decision had been reached in Vance's pending EEO claim. There is no evidence as to whether Hummel or Rhoads knew that the complaint had been concluded.

The determination of whether Vance has put forth evidence sufficient to make a prima facie claim of retaliation is a close issue. When determining close issues on motion for summary judgment, the court balances those issues in favor of the non-moving party. The court therefore finds that Vance has alleged sufficient facts to make out a prima facie case of causality. This inferred proof of causality, while sufficient to advance the court's analysis to the next level,

14

cannot satisfy Vance's more onerous burden of showing causality in the final stage of inquiry. *See Cerberonics*, 871 F.2d at 452.

After Vance establishes a prima facie case for retaliation, the defendant is able to rebut the prima facie case by giving legitimate, non-retaliatory reasons for the adverse action taken against Vance. *See Cerberonics*, 871 F.2d at 457. The defendant argues that the record shows that Vance was a difficult employee because of misconduct and absenteeism, and that the management at the Harrisonburg Post Office fielded complaints from customers and members of the community based on Vance's on-the-job performance. The defendant asserts that the decision to terminate Vance's employment was the last step in a series of progressive disciplinary measures undertaken by the USPS. According to the USPS, the letter of warning and fourteen-day suspension in the months before Vance's termination show that the defendant systematically increased discipline in an effort to correct Vance, and that termination was the final step in this process. The court finds that the defendant has met its burden of production to put forth legitimate, non-retaliatory reasons for its action.

Since the defendant has met its burden of production, the presumption raised by Vance's prima facie case has been rebutted. *St. Mary's Center*, 509 U.S. at 507 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). Vance therefore assumes the burden to allege facts to support the assertion that the defendant's proffered reasons are pretextual, and that retaliation was the real reason for the adverse action. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). For Vance to succeed with this burden, the court must find that "the reason was false, and that discrimination was the real reason." *St. Mary's Center*, 509 U.S. at 523–24. One finding, however, does not necessarily follow the other. The Court in *St. Mary's Center*

15

explained, that the fact "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct." *Id.* But, should the court discredit the defendant's proffered reasons, that discrediting can be used to infer discrimination. It may not, however, be used to compel the finding. *Id.* at 511; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 47 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination....").

Vance argues that the defendant's proffered reasons are false because the evidence does not support the contention that Vance was responsible for any misconduct on March 9, 2004. Under the USPS's progressive discipline rationale, according to Vance, the defendant had no valid reason for firing him absent the March 9, 2004 incident. Vance relies heavily on statements made by Roy Smith, the only non-party witness to the March 9, 2004, incident. Smith asserts that on March 9, 2004, management had Vance's mail cased by the time he reported to work, essentially leaving Vance with no work to do that morning; that Rhoads' "let's get something straight" statement was inappropriate and provoked Vance; and that Rhoads initiated the incident. Smith concludes that the Letter of Removal was issued without just cause and that it was punitive rather than corrective. The September 24, 2004, arbitration award issued by Mark Lurie disagreed with Smith's assessment of the incident and found just cause for the termination based largely on Vance's insubordination on the day of the incident.

The court finds and concludes that Vance has alleged sufficient facts to establish that there is a genuine issue of material fact as to whether the USPS's stated reasons for firing him are pretextual. In particular, the court finds that there is a genuine and material dispute regarding

16

USPS's justifications for a number of its disciplinary actions against the plaintiff prior to the termination. Most importantly, the court finds that the contested facts regarding the incident of March 9, 2004 are material to the plaintiff's showing of pretext. *See Equal Opportunity Employment Comm. v. Sears Roebuck and Co.*, 243 F.3d 846, 854 (4th Cir. 2001) (finding that in most instances "a prima facie case and evidence of pretext raises a sufficient inference of discrimination to entitle plaintiff to survive a motion for summary judgment."). For these reasons, the defendant's motion for summary judgment as to the claim of retaliation is denied and the case shall proceed to trial on that issue.

## Conclusion

For the reasons stated above, the court will grant the defendant's motion for summary judgment as to Vance's claims for discrimination and deny the defendant's motion for summary judgment as to the plaintiff's claim for retaliation.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

DATED this 22<sup>d</sup> day of DECEMBER 2006.

*[signature]*

United States District Judge

Case 5:05-cv-00013-GEC-BWC   Document 61   Filed 12/22/06   Page 17 of 17   Pageid#: 582